Currents Company, Eddell, 2130707. Reference from Mr. Middleton. Good morning, Your Honors, Counsel. May it please the Court, my name is Houston Middleton and I represent Central Crude, Inc., the appellant in this case. My co-counsel, who originally was designated to present the appellant's case to court today, is experiencing significant health problems which prevent him from appearing, so I am here in his stead to present our client's case. Is that Mr. Doyle? I'm sorry? Is that Mr. Doyle? Yes, sir. Who argued the matter in the hearing below? Mr. Doyle, yes. Well, we hope he feels better. Yes, thank you. I'll convey your wishes to him today. Central Crude respectfully asks this Court to reverse the District Court's grant of temporary judgment to Appellees Liberty Mutual Insurance Company and Great American Insurance Company. Your Honors, this case is about the District Court's misapplication of the standard for applying a total pollution exclusion to bar an insured from recovering remediation defense costs under the CGL policy. We've identified three points of error that we believe the District Court committed in this case. The first, and really it's foundational, is that the District Court misapplied the language in Doar v. Mobile Oil Corporation, which has led to an absurd result. The Doar Court requires three elements to be present in order to apply a total pollution exclusion against an insured. There must be a polluter, there must be a pollutant, and a discharge or release of the pollutant must have occurred by the insured within the meaning of the policy. And it's that by the insured part that the District Court got wrong. The Doar Court included the language by the insured precisely because the mere occurrence of a discharge or release of a pollutant is not sufficient to find that a TPE bars coverage. Here, the District Court ignored the by the insured part of the third prong of the Doar analysis, and this mistake led to others.  Yes, Your Honor. I'm going to take it out of this case. In other words, Doar was a personal injury case. It was a class action. It wasn't pollution damage to property. And one quote out of Doar, I'll give you a short quote, was limiting the coverage of Doar. It said, We found the total pollution exclusion was neither designed nor intended to be read to exclude coverage for all interactions with irritants or contaminants of any kind. Instead, we find it is appropriate to construe pollution exclusion clause in light of its general purpose, which is to exclude coverage for environmental pollution. And under such interpretations, the clause will not be applied. So, there's other limiting language to the same effect. So, this, well, let me just, the civil law treatise by McKenzie and Johnson said essentially the same thing, that Doar is a very limited case. And this is what they said. They said that the ultimate conclusion in Doar is that the pollution exclusion was designed to exclude coverage for environmental pollution only and not for interactions or irritants or contaminants of any kind. Now, why doesn't that language take Doar out of this case, which is a clear pollution damage case? Right. Well, I think the point in Doar, as we read it, is that it's got to be by the insured. The release or the discharge must be by the insured. And so, in this case, there's a central question of fact, which is why we believe it's sort of foundational. That's true if Doar applied, but I'm asking you why isn't Doar limited to non-environmental pollution cases? The court of appeals in Lodwick picked up on that and that's the approach they took. Yeah. I don't know that, I haven't read the Lodwick case. I'm sorry to report that to you, but I don't . . . That was relied on by the district court in the case. I'm sorry? The district court relied on that case. Right. So, our position is that Doar is applicable because that's the case that controls how, in Louisiana, how the circumstances under which a TPE would apply. So, that's our reading of the case. What's your argument to us? The district court committed legal error and it mistakenly used the old Ducote decision, didn't look at any of the factors, or is it just a factual one, basically Justice Victory's dissent in Doar that there are three factors and you have made a fact dispute point on the third? Which is it, legal or factual? It's the court's application of Doar had the effect of ignoring Doar and applying Ducote. But he never cites Ducote. The hearing was all about exactly this issue. It looks to me he applied Doar. The district court did. I thought your argument was just third element's got a fact dispute. No summary . . . Right, and that's essentially it, Your Honor. That's essentially what it boils down to. We have a genuine issue of fact that has been established by our expert report. Dr. Conner's report creates that issue of fact and . . . And they rely on the DEQ blaming you and I guess you reported to them it was your pipe. But you're saying Dr. Conner's report now means it could have been an adjacency or Chevron. It establishes that probability. In Doar, did Chief Justice Calagaro ever talk about innocence or fault as determinative? Are those the words that . . . I don't think he used those . . . He didn't really. And I don't see any Louisiana case saying these are each independent elements that have to exist. I guess I read it, and this is just to test you, the way the exchange you had with Judge Davis, which is, well, we can't allow insurance for environmental pollution. But, of course, people can insure for sort of some little toxic irritant. So we've got to figure out a way to distinguish. And here are three considerations. And then they give the three considerations. But each isn't necessary. So I'm looking for a case because you're saying each has to be necessary. You've got a fact issue on the third. And I'll just finish my long-winded question. You probably have read the cases, the drywall case from Judge Fallon. Well, in that case, the argument was the drywall's got gases coming out. And Judge Fallon said, that's true, one of the factors. But these manufacturers aren't pollutants. Even though it was from the insured, the manufacturers aren't pollutants. And so we know this isn't an environmental pollution case. So it seemed to me more the way people interpret DOOR is there's a totality. But once you figure out it was environmental pollution, then the total exclusion applies. Respectfully, that's not our reading of DOOR. Our reading of DOOR is that each of these elements must be present. What's your best case for that, that each element can't have a fact dispute? Because then I would think you'd never get summary judgment. Well, I don't have a case that says— See my point? Because everyone always disputes, almost always, what exactly, eventually, who will be assigned fault. So under DOOR then, would you ever get summary judgment? I'm trying to think of a—I think you would if it was established, say in this case, if it had been established early on. And that just sort of dovetails into the bad faith argument. If it had been established early on by an investigation by our insurance company, Central Crudes Insurance Company, that we were responsible for the release. Yeah, I don't see how—I don't think we can bleed the two. You can argue can, but what's your legal authority that an insurer has to go and establish— they have to come and establish who's at fault? What Louisiana bad faith statutes talk about or indicate— and I don't have the citation, I think it's 1973 and 1892, I believe, LARS, each of those. They establish that the insurer has a duty to conduct a good faith adjustment of the claim. In other words, to take affirmative steps and to determine all the facts and issues surrounding the claim. And in this case, that's not what happened. I thought—correct me if I'm wrong—I thought they get a call from your client saying it was our pipe we're responsible. No, I think they did, but I think they also got subsequent— and forgive me, I haven't reviewed the record very closely. I got this assignment yesterday. You got the assignment yesterday, so you haven't— Well, I've been in the case, Your Honor, but— Because if you can't read the appropriate cases, I'm not criticizing because there's a health circumstance. You can move to continue a case rather than come in unfamiliar with the record. No, no, I'm— It's not a criticism because you're doing well. I'm familiar. I think that there are points in the record which indicate that down the road from that initial call, hey, it's our spill, it's not our spill, or it may not be our spill. And certainly that's the deposition testimony of the guy on the ground, and that's in the record. I know that. It sounds like what you're arguing is that you've got to try your case before you can determine whether or not you have coverage. No, I don't think that's the argument. The argument is that we were tagged with responsibility for this by the DEQ, and Chevron's not a part of this case, but Chevron is a part of the facts. And I think that the DEQ tagged my client with responsibility for this. And had there been a full-scale investigation other than making a few phone calls to folks on the ground, there would have been a potentially different outcome. Central Crew—I'm sorry. Liberty has a staff, an on-staff geologist that might have been sent down there. There's deposition testimony that they didn't conduct. They didn't send anybody down there. They didn't hire anyone to find the source of the leak simply because it would have been cost-prohibitive, and that's correct. But your company reported the leak to the Environmental Quality. Correct, as was their responsibility. Part of it was on their land, and there had been a pinhole leak prior to this one, the one at issue today, that was found, sealed, and remediated the previous year. So they thought it might be their leak, and that's one reason why they reported it, and that's one reason why they reported to Liberty Mutual that they thought it might be their leak or that they thought that it was their leak. But as you go on, that issue became one in dispute. Under your theory, if at the end of the game they're found to be at fault, they don't get insured, right? Then the policy clearly applies. Well, so here – so correct. So if there's – if they are – But let's say at the end of the game they weren't the ones at fault. What do you get back because you've voluntarily given whatever you've given for mediation? Well, I don't think it's been voluntary. It's been – we have remediated – Was it legally obligated? I'm sorry? Was it legally obligated under the policy? Under the policy, no, but under the DEQ, the DEQ gave us responsibility, and we have been – I'm just wondering what you would recover either way. Right. The argument does get to sort of a catch-22 other than the duty to defend. Well, what our contention is that had they done – we want remediation costs. The cost of remediation and the defense of the lawsuit that was filed in 2008 by Columbia Gas. Had they done – had they acted in good faith and not in bad faith in investigating the source of this spill, we would not have been tagged by the DEQ with these remediation costs. And that's the crux of the issue. That's the point of the lawsuit is to recover remediation costs. We're out over a million dollars in remediation costs over these last 15 years. And had Liberty Mutual done what they were obligated to do, that is conduct a good faith investigation of the source of the spill, then we wouldn't be in the situation that we're in today. I'd like to reserve the rest of my time. Thank you. Thank you, sir. Good morning, Your Honors. Katherine Jeruso for Liberty Mutual Insurance Company. As Your Honors have pointed out today, what we're talking about here is a quintessential claim of environmental pollution. We're talking about a release of crude oil in 2007 in which more than 25,000 gallons were released over a time period of more than 10 years, and more than a million dollars was incurred to remediate the spill. All the parties agree that DOOR is the controlling case for purposes of determining whether the total pollution exclusion applies to a claim. And Judge Davis, as you pointed out, DOOR overruled the Ducote case and said that although we're not going to apply the pollution exclusion to any case that only marginally involves something that could be called a contaminant, such as in the example that Justice Calagaro gave was a slip and fall in Drano, we are going to apply the total pollution exclusion in environmental pollution claims such as this one. But didn't you, I'm sure you know well, Justice Victory in dissent said beware what you've done. You'll never be able to get summary judgment again. And scholars noticed that too. I guess so to turn that into a question for you, do you lose if we conclude that Dr. Connors' report does create a fact issue on the third element that maybe Chevron was the one at fault? Do you lose if there's a fact issue on the third consideration? Right, Your Honor. So my response to that is I don't think that DOOR requires the court to find fault. The focus in applying the DOOR factors is on the nature of the claim against the insured. That is the focus. Yes. And here, as Your Honor has suggested, the overarching theme of DOOR is this is an environment. It is a focus and theme. It's a case that seems to be written a long time ago because it had, I understand what the court was getting at to reverse Ducote. But even the dissent said strictly red, there's a problem. So I was reading very closely how the district court dealt with it. Correct me if I'm wrong. It's at page 10 of the decision. Either the district court said there's no dispute of fact as to source, and I wouldn't think the record is open to that because Dr. Connors' report. Or the district court said, well, you're central crude. They're an oil producer. So they're just their business is a polluter business. I can't believe that's it. Then the only other reason I saw the district court read distinguished DOOR was, well, they're only an alleged polluter, and that's all that's required. You don't have to be an actual polluter. But he didn't give any convincing authority. He quoted the Sandhill case. Sandhill, I'm sure you've read. That's a blowout. Everyone agreed the source. There was no dispute about the source. So what's the best case where fault is in dispute factually? Your Honor, I guess. What's the best case? Or what do you think the district court's reasoning was? Am I wrong limiting it to those three? Or do you think that's a fair description of it? No, I do think that's a fair description. I think, so my response to Senator Crude's argument on fault, that DOOR requires a finding of fault, would be threefold. Number one, nowhere in DOOR does the court say that there has to actually be a finding of fault. I agree. DOOR focuses on, DOOR instructs the district court to focus on the actions of the alleged polluter. What was the claim against the insured? Isn't it an environmental pollution claim? Okay. Second, I would say the problem with Senator Crude's argument that there has to be a finding of fault is that it conflates the issues of liability and coverage. And this court repeatedly has instructed that those issues are distinct. And, for example, in the Hartford Casualty Company case, which we've cited in our brief, 938 F. Second 601. And then, on a somewhat related note. This is your third point? Yeah, sorry. It's more articulate than any case I've read, so you, go ahead. Well, thank you. If Central Crude is correct that it's not at fault here, it can't meet its burden to prove coverage in the first instance. Because the policy requires it to be legally obligated to pay damages. If it's not at fault, and yet it voluntarily paid all these damages, it can't prove that it's entitled to coverage in the first instance. But what if there's an environmental agency award that they pay? Well, there's a process. Your Honor, I'm not in the weeds with environmental agencies, but I know there's a process by which you can attempt to exonerate yourself from an initial finding of fault. And I think that would have been the way to go. And Central Crude, here we are, how many years later? Almost 15 years later, and Central Crude has never exonerated itself from this initial finding that it was the responsible party for this spill. So, to the extent Central Crude voluntarily paid these damages, it's not entitled to coverage under the insuring agreement, and you don't even get to the total pollution exclusion. Did you read Judge Fallon's drywall case? Yes, Your Honor. I think I'm right that these are three factors and considerations, not independent elements. It's a totality to try to do the larger theme focus of distinguishing obvious environmental pollution from these crazy little rotor-rooter cases. Those are not pollution. I think that's a fair read of Doar. I think that Doar's overarching focus was, let's separate these into two different categories. We're going to treat environmental pollution cases in one way, and then we're going to treat these cases that only marginally or involve some inconsequential contact with something that could be considered a contaminant. Those are the ones we're really going to parse and really examine. And so, I do think that's a fair read of Judge Fallon's opinion. Yes, Your Honor. So, I guess to move on. So, it's our position that the district court correctly applied Doar here and applied the pollution exclusion to bar coverage in this environmental pollution claim. The next part of the district court's opinion was, if you find that the total pollution exclusion applied, as the district court did, and we would say correctly, then did Central Crude prove that it's entitled to coverage under the policy's time element endorsement? Central Crude, it's our position that Central Crude has waived that argument in this court because it was not briefed. But, in any event, even if the court finds it was not waived, the time element endorsement only applies if the spill lasted, began and ended within five days, and it's Central Crude's burden as the party seeking coverage to establish that. And here, the evidence overwhelmingly showed that the spill lasted much longer than five days and, in fact, could still be ongoing, based on the testimony of Central Crude's own employees that he submitted with the summer judgment motion. And then the final issue that the district court considered was bad faith, whether Liberty Mutual was in bad faith in denying coverage. As several Louisiana courts have held, the bad faith statutes are penal in nature and thus have to be strictly construed. The insurer has a burden to prove arbitrary and capricious conduct by the insurer, and the insurer does not act in an arbitrary and capricious fashion if it refuses to pay a claim because of a genuine dispute over coverage. Here, there was at least a genuine dispute over coverage, given the nature of this environmental pollution claim against Central Crude. We would submit that the district court correctly found that there was no coverage, in which case there likewise could be no bad faith. And so, for all of those reasons, Your Honors, we would ask you to affirm the district court's decision. Thank you very much. Your Honors, may it please the court, Miles Morrison for the Excess Insurer Great American Assurance Company. At most, Great American is just along for the ride on this appeal. The parties agree that if Liberty doesn't owe coverage under its primary policy, Great American doesn't owe coverage either. And Liberty does not owe coverage for the reasons Ms. Giruso just stated. I had a couple of brief points I wanted to make, and I think Judge Higginson's and Judge Davis's questions touched on most of them. The first point I was going to make was actually to quote the exact portion of Doar that Judge Davis read. And I think that dovetails as well with Judge Higginson's question as to whether the Doar considerations, the three factors, are really factors or just considerations. And I think reading those two pieces together in the Doar decision, they come one after another. And so when you look at the decision, the court says, yes, we think it's problematic to apply the pollution exclusion to every substance that could conceivably be considered a pollutant or that fits within the literal definition. The pollution exclusion must be construed and applied in accordance with its general purpose, which is to exclude coverage for environmental pollution, which is just what this case involves. That's really not disputed. The court then goes on to say, to identify three factors that I think are relevant in considering whether a particular claim for insurance coverage is the sort of environmental pollution coverage claim that the absolute pollution exclusion was intended to address. Now, so based on that framework, I think looking at the three factors, they are, again, more considerations than factors. But actually, when you look at what the factors entail and look at the record here, I think all three of the factors, including the third, actually support the application of the pollution exclusion in this case. Clearly the first two, but the third. Clearly the first two. And I think some of the subsequent decisions applying Doar and following Doar recognize the sort of balancing that Doar requires. Because in the discussion, particularly of the first factor, subsequent decisions, including I think the Wadwick case and perhaps the United Specialty Insurance case cited in the district court's decision, recognize that with respect to the first factor, okay, the Supreme Court, the Louisiana Supreme Court and Doar identified a number of different factors relevant to determining whether a particular insured is a polluter. But clearly the most important factors there are the nature of the insured's business and whether it is engaged in the sort of typical pollution activities as part of its central business. That would really put the insured on notice that, hey, you're in a polluting business. You have these exposures. You need to go out and get separate pollution coverage. And an insured in that situation, when reading their insurance policy, would immediately say, wait a second, this doesn't cover a big part of what we do. And so we need to go get separate coverage. And so there's no unfairness. Do you by chance read the Hassinger article that has the clever title? I did not. His title is, quote, Supreme Court slams Doar on summary judgment under TPE. And that's sort of the Justice Victory dissent, it seems to me, the argument Mr. Doar made here, which is you could just never get summary judgment. Have you, in the 20 years, you're saying there are quite a few summary judgments applying Doar? Yes. In fact, the— Even when some factors aren't met? Right. The Lodwick decision, for example— That's the best case. There, the insured, Oracle, disputed that it was responsible for the polluting activities in question. The case was presented for summary judgment at the duty to defend stage. And the Louisiana Circuit Court of Appeals applied the traditional eight corners test under Doar and found that the allegations, if proved as alleged, would be barred by the absolute pollution exclusion. And that's exactly the case here, Your Honor. The allegations for which Central Crude seeks coverage are allegations that it is liable for a massive pollution discharge from an oil pipe. That's the only basis for which Central Crude is being held liable. That's the only thing for which it is seeking insurance coverage. And so if Central Crude is liable, the absolute pollution exclusion bars coverage. If Central Crude is not liable, then there are no damages that it's legally obligated to pay for property damage, and it doesn't get to square one in Liberty's insuring agreement. I see that I'm out of time, so I will stop. Thank you, Your Honor. Thank you, sir. Mr. Middleton, you have five minutes on rebuttal. Thank you. Your Honor, just a couple of points. This is, we're not, this is not about, you know, we, this is about just simply creating an issue of fact, or not creating but establishing one, and then letting it go to a jury. This is not, you know, if we win here, then we win the case. I just want to point that out. But, you know, Doar says, by the polluter. I mean, it explicitly says that. That phrase, curiously, is left out of every single quote of quotation of the Doar case. I was worried about that, but then in Louisiana case law, they're all leaving it out. Well, I mean, I'm just, it's nonsensical to read it otherwise. I mean, to say that the phrase, by the polluter, was just kind of an add-on that doesn't really have any meaning, that's a nonsensical reading in our view. One final point that I didn't get to address earlier is that Great American is an excess carrier here, and they issued a filing form policy which tracks the underlying coverage provided by Liberty. We didn't necessarily brief the issue of Great American's involvement in this case, but we did appeal the summary judgment as to Great American. Just as the district court erred at granting summary judgment to Liberty, it erred also in granting summary judgment to Great American. Thank you. When you pass on our best wishes to Mr. Doar, tell him that his exchange with Mr. Pipes below in district court was a very creative, good exchange. It was. It was. I enjoyed being there for him, so thank you. Thank you, sir. We take these cases under advisement, and that's the conclusion of our oral arguments.